Edward E. Shinnick, Trustee, and Ella G. Mincer,
Complainants, v. Jacob Goodman et al., Defendants.
Appeal of William Zimmerman, Intervening
Petitioner.

Gen. No. 34,224.

Heard in the
second division of this court for the first district at the April term, 1930.
Opinion filed October 14, 1930.

RIEGER & RIEGER and SAMUEL M. ASH, for appellant;
SAMUEL M. ASH, of counsel.

JOSEPH ROSENBERG, for appellee; AARON L. STEIN, of
counsel.

Mr. Justice Gridley delivered the opinion of the court.

This is an appeal by William Zimmerman from an order of the superior court of Cook county, entered in a foreclosure proceeding on February 8, 1930, wherein the court, following the recommendation of the master, directed that the Union Bank of Chicago, as receiver, pay over to Harry J. Fireman the balance of moneys in its hands, viz., $1,814.21, and that, subject to said payment, its final report and account be approved and it be discharged as receiver.

Harry J. Fireman prayed a separate appeal from the order but failed to perfect it. He has here assigned cross errors, claiming that said receiver should be required to pay to him certain other specified sums. In the printed brief and argument of his counsel, however, it is conceded that such cross errors cannot properly be considered by this court (*Hindman v. Off*, 246 Ill. App. 528, 532), and the same have been withdrawn.

The sole question involved in Zimmerman's appeal is whether he or Fireman, the conceded assignee and owner of the equity of redemption, is entitled to said moneys in the receiver's hands.

On October 29, 1925, Jacob Goodman and Lillian Goodman, the then owners of the premises improved by an apartment building, executed and delivered to Ella G. Mincer, one of the complainants, their promissory notes aggregating $15,000. To secure their payment they conveyed the premises to the other complainant, Edward E. Shinnick, as trustee, by a second trust deed, which contained the usual covenants and pledged the rents and profits as further security for the indebtedness. The first trust deed then on the premises amounted to $60,000. Subsequently the Goodmans sold the premises, subject to said first and second trust deeds, to Katie Forman and Joe Forman. In part payment of the purchase price the Formans exe-

cuted and delivered to the Goodmans their promissory notes, dated November 7, 1925, aggregating $13,500 and all payable within one year. To secure these notes they executed and delivered a third trust deed on the premises to Herman S. Lanfield, trustee, which deed contained the usual covenants and pledged the rents and profits as further security, etc. Subsequently, a fourth trust deed, held by the Liberty Loan and Mortgage Co. and securing notes aggregating $589, was placed upon the premises. Subsequently, the Formans, by deed dated April 3, 1926, recorded April 14, 1926, conveyed the premises to James Doyle.

On April 30, 1926, default having been made in the payment of certain of the notes held by Ella G. Mincer, complainants filed their bill to foreclose said second trust deed. Among the numerous parties made defendants was James Doyle, who was then the owner of record of the premises, subject to said four trust deeds. The bill prayed that Doyle and another be restrained from collecting the rents and that a receiver be appointed, etc. The Union Bank of Chicago was appointed receiver to take charge of the premises and collect the rents, and it took possession and entered upon its duties. Such proceedings thereafter were had that on October 28, 1926, a decree of sale to satisfy said second trust deed was entered and a sale of the premises was made by the master on November 22, 1926. It appearing that the total indebtedness due to Ella G. Mincer had not fully been satisfied, the court, on November 26, 1926, in addition to confirming the sale, entered a deficiency decree against the Goodmans for $5,763.09. Thereafter the receiver remained in possession and continued to collect the rents, and out of the same said deficiency decree was satisfied. Without any order of court, the receiver thereafter remained in possession and continued to collect the rents. The fifteen months' period for redemption expired on Feb-

ruary 22, 1928, and shortly thereafter a master's deed of the premises was delivered to William Zimmerman, assignee of the purchaser at the foreclosure sale. On March 6, 1928, the receiver filed its report, showing that it had collected up to February 6 the total sum of $16,320, and had expended $11,531.28, leaving a balance in its hands on said date of $4,788.72, which report was approved by the court. On May 19, 1928, the receiver filed its final report and account showing receipts, including said balance, of $5,534.72, and disbursements of $3,720.51, leaving a balance in its hands of $1,814.21, the fund in controversy.

In the meantime two intervening petitions had been filed in the cause, one by said William Zimmerman on February 20, 1928 (two days before said period for redemption expired), in which, after making allegations, he prayed that the receiver, out of the rents and profits collected from the premises, less payments made on said deficiency decree and proper costs and expenses, pay to him "up to but not exceeding the sum of $8,000." To the petition separate answers were filed by Lillian Goodman, Harry J. Fireman and the receiver. The other intervening petition, filed May 14, 1928, was that of said Fireman, alleging in substance that he, as assignee of the owner of the equity of redemption and holder thereof, was entitled to whatever balance was in the receiver's hands (less its proper charges and expenses), plus certain payments to Zimmerman and others which, as he claimed, the receiver had improperly made. To the Fireman petition separate answers were filed by Zimmerman and the receiver. On June 1, 1928, Fireman filed objections to the receiver's final report and account, and subsequently the court referred the two intervening petitions and answers thereto, as well as Fireman's objections, to a master to take proofs and report his findings and conclusions. Considerable evidence, oral and documen-

tary, was introduced before the master, and on May 13, 1929, his report was filed.

Among the master's findings are in substance that, at the time of the filing of complainant's bill to foreclose (April 30, 1926), James Doyle was the owner of the premises and was made a party defendant to the bill; that he was not personally served with process, though a notice by publication was given; that no order defaulting him ever was entered; that in the affidavit of complainants' solicitor, upon which the notice by publication was based, his place of residence was stated to be at 4450 West Madison Street, Chicago; that the notice mailed by the clerk pursuant to the affidavit was addressed to Doyle at said address; that said number, 4450 West Madison Street, is a vacant lot; and that ''Doyle had no notice of the foreclosure proceedings in which said decree of sale was entered.''

The master further found in substance that on April 13, 1926, Doyle executed and delivered his quitclaim deed, conveying all his right, title and interest in the premises to one Leonard F. Hammel, which deed was recorded on June 24, 1926; that on April 23, 1926, Hammel and wife executed and delivered their quitclaim deed, conveying all their right, title and interest in the premises to said Fireman; that on the same day Hammel and wife also executed and delivered to Fireman a written instrument, conveying and assigning to him all their right of redemption, and appointing him their attorney in their names. but for his use and benefit and at his own expense, to demand and take all lawful means for the recovery of the premises, and to demand an accounting of the rents, issues and profits of the building; and that Fireman, in his intervening petition of May 14, 1928, claims not only that he is entitled to be paid said fund of $1,814. 21, but also in addition certain other specified sums which the receiver had improperly disbursed and taken credit for as ap-

peared from its reports. The master expressed the opinion that for reasons stated Fireman's claim should be limited to said fund or balance of $1,814.21.

As to the claim of William Zimmerman for said fund or balance, the master found that it was based upon the following facts in substance, as alleged in Zimmerman's intervening petition of February 20, 1928, and as shown by the evidence: That Zimmerman is the owner and holder of an unpaid note for $8,000, dated April 1, 1926, executed by Jacob Goodman; that as *security* for said note of $8,000 Goodman delivered to Zimmerman a certain trust deed, and notes secured thereby, aggregating $13,500, of Katie Forman and Joe Forman; that said trust deed was a third trust deed on the premises and was executed and recorded when the Formans were the owners of the premises, subject to said second trust deed of $15,000 to Edward E. Shinnick, which was foreclosed in the present proceedings; that said notes of $13,500, and the trust deed securing them, were proven up in the present foreclosure proceedings *as the property of said Jacob Goodman and Lillian Goodman;* that the same were found by said foreclosure decree to be a lien upon the premises, subject to said second trust deed being foreclosed; that when said foreclosure proceedings were instituted (April 30, 1926), Jacob Goodman was indebted to Zimmerman on said note of $8,000; that he requested Zimmerman to deliver to him (Goodman) the said notes of $13,500, and said third trust deed, so held by Zimmerman as collateral; that thereupon on September 21, 1926, said Goodman executed a written agreement, whereby he agreed to hold said notes of $13,500, and said third trust deed, as trustee for Zimmerman, but requested their use for the purpose of proving them up in said foreclosure proceedings; and that in the agreement Goodman also assigned to Zimmerman all rights, benefits, orders or decrees which

*might* be entered in the Goodmans' favor in said foreclosure proceedings. The master further found that Zimmerman claimed in his intervening petition that said notes of $13,500, and said third trust deed, so delivered to Goodman under said agreement, are Zimmerman's property, and he for the first time prayed that he be substituted in said foreclosure proceedings in lieu of the Goodmans, *as the owner* of said notes and trust deed, and *as the owner* of the indebtedness evidenced thereby, as found in the foreclosure decree.

The master further found in substance that Zimmerman never acquired title to said notes of $13,500; that they had merely been deposited with him as *collateral* by the Goodmans and as security for the payment of said $8,000 note; that no sale of said collateral had ever been made to Zimmerman; that Zimmerman had never, prior to the filing of his said intervening petition on February 20, 1928, asserted any right, title, interest or claim to any balance in the receiver's hands; that no order of court had been entered continuing the receiver in possession after the master's sale under the foreclosure decree; and that no order of court had been entered appointing a receiver of the premises during the period of redemption, which expired on February 22, 1928. And the master concluded that the said fund or balance in the receiver's hands should be paid to Fireman.

The several objections filed to the report by Zimmerman and Fireman were ordered to stand as exceptions, and subsequently there was a hearing before the chancellor, resulting in the entry of the order appealed from as first above mentioned. In the order the court approved and confirmed the master's report in all respects and made numerous findings which are in substantial accord with the findings of the master.

After reviewing the evidence, the findings of the court following those of the master, and the briefs and

arguments of respective counsel, we are of the opinion that the order appealed from should be affirmed. We think that Fireman, assignee of the owner of the equity of redemption as shown, is entitled to said fund or balance of $1,814.21, as against the claim of Zimmerman thereto.

It is the general rule that the owner of the equity of redemption is entitled to the rents and profits of the premises until the expiration of the period of redemption. (*Hindman v. Off*, 246 Ill. App. 528, 530; *Davis v. Dale*, 150 Ill. 239, 243; *Stevens v. Hadfield*, 178 Ill. 532, 535; *Standish v. Musgrove*, 223 Ill. 500, 506.) If, however, the mortgagor pledges the rents as security and the premises fail to bring enough at the sale to pay the judgment, the mortgagee may *take steps* to subject the rents to pay the deficiency, and, if there is a receiver, he will be ordered to pay such deficiency out of the rents. (*Hindman v. Off*, 246 Ill. App. 528, 531; *Straus v. Bracken*, 242 Ill. App. 122, 127.) In *Davis v. Dale*, *supra*, it is said: "The possession of the receiver, and his receipt of the rents and profits arising from the property, would be for the benefit of the person entitled to the same, so that the parties acquired no additional right because the fund is in the hands of the receiver." In the present case foreclosure proceedings were instituted by Ella G. Mincer, holder of the notes secured by the second trust deed on the premises, which trust deed pledged the rents as further security for the indebtedness. A receiver was properly appointed on her motion and it took possession and proceeded to collect the rents. Subsequently a foreclosure decree was entered in favor of Ella G. Mincer and there was a sale, and, the property not bringing the amount of the indebtedness due to her, a deficiency decree was entered against the Goodmans. Before the period of redemption had expired the receiver out of the rents paid said deficiency in full and, without order

of court, remained in possession and continued to collect the rents. It appears that the *Goodmans,* against whom said deficiency decree had been entered, were the owners and holders of certain notes secured by a *third* trust deed on the premises, which trust deed also pledged the rents as further security; that the Goodmans proved up the indebtedness due to them in said foreclosure proceedings; and that the court, in said foreclosure decree in favor of Ella G. Mincer, found that said third trust deed, securing said notes which the Goodmans owned and held, was a lien on the premises subject to said second trust deed being foreclosed. But it does not appear that the Goodmans, after said deficiency decree against them had been satisfied out of the rents, or at any other time during the redemption period, filed any cross-bill or petition, or took any steps whatever (see *Eggers v. Adler,* 248 Ill. App. 118, 124; *Ruprecht v. Muhlke,* 225 Ill. 188, 193), to have any of the rents remaining in the receiver's hands, after the payment of said deficiency decree and proper costs and charges, applied in part satisfaction of the indebtedness due to them, as secured by said junior or third trust deed. Zimmerman's claim to said fund in the receiver's hands arises wholly through the Goodmans, and, as we do not think, under the evidence and for the reasons stated, they are in any position to claim said fund as against the owner of the equity of redemption, or the assignee thereof, Zimmerman is in no position to claim said fund. Furthermore, the court in the order appealed from properly found from the evidence that Zimmerman never acquired title to said notes, owned and held by the Goodmans and secured by said third trust deed; that he only held them *as collateral* to an indebtedness of $8,000 which Jacob Goodman, alone, owed to him; and that no sale of such collateral had ever been made to him. We think it clear, therefore, that he cannot be considered as the

116

owner of notes secured by a junior trust deed, or entitled to any right to the fund in question, which the junior mortgagees, the Goodmans, might have had.

Accordingly, the order of the superior court of February 8, 1930, is affirmed.

*Affirmed.*

SCANLAN, P. J., and BARNES, J., concur.