**In re SOUTHERN GARDENS, INC., Debtor.**

**ROOSEVELT FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Steven N. MOTTAZ, Trustee, and Southern Gardens, Inc., Defendants.**

Bankruptcy No. BK–81–40018.
Adv. No. 82–0027.

United States Bankruptcy Court, S.D. Illinois.

Aug. 24, 1982.

Robert G. Wuller, Jr., Belleville, Ill., Gregory D. Willard, St. Louis, Mo., for plaintiff, Roosevelt Federal Sav. & Loan.

Steven N. Mottaz, Alton, Ill., trustee.

Richard Sterling, Belleville, Ill., for defendant Southern Gardens, Inc.

Joel A. Kunin, East St. Louis, Ill., for trustee Steven N. Mottaz.

### ORDER

J.D. TRABUE, Bankruptcy Judge.

At East St. Louis, in said district, this matter having come before the Court pursuant to this Court's order of April 28, 1982, directing that briefs be filed on the question of entitlement to rent proceeds, Roosevelt Federal Savings and Loan having filed its briefs by Gregory D. Willard, its attorney, the Trustee having filed his brief by Joel Kunin, his attorney; the Court, having read the briefs that were submitted and having researched the law and otherwise being fully informed in the matter, finds as follows:

1. On or about October 7, 1977, Roosevelt Federal Savings and Loan Association (Roosevelt) loaned Southern Gardens, Inc., (debtor) the sum of $550,000 to enable the debtor to purchase a shopping center in Flora, Illinois.

2. The loan was evidenced by a promissory note in the principal amount.

3. The loan was secured by a mortgage on the Flora center, and by an assignment of the rents and leases of the shopping center.

672

4. The note, mortgage and assignment of rents and leases were all executed as part of the same transaction.

5. The mortgage was filed in the Recorder of Deed's office in Clay County, Illinois.

6. The assignment of rents and leases was filed in the Recorder of Deed's office in Clay County, and Uniform Commercial Code Financing Statements were filed with the Secretary of State and Clay County to secure the assignment.

7. On January 30, 1981, the debtor filed a voluntary petition for a business reorganization pursuant to Chapter 11 of Title 11 of the United States Code.

8. The debtor remained a debtor-in-possession during the business reorganization.

9. On September 18, 1981, the business reorganization was converted to a liquidating bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.

10. Steven N. Mottaz was appointed the Trustee under Chapter 7.

11. The debtor was current with all of its obligations under the mortgage through September, 1981.

12. The payment due on October 1, 1981, was not made to Roosevelt Federal Savings and Loan.

13. On October 16, 1981, Roosevelt made written notice of the default to the Trustee.

14. On November 9, 1981, Roosevelt made demand upon the Trustee to comply with the assignment of rents and demanded that the Trustee sequester the rents pursuant to § 363(c)(2) of the Bankruptcy Code.

15. The Trustee set the rents of the Flora center apart pursuant to Roosevelt's request.

16. The Trustee did not turn over any of the rents to Roosevelt, and continued to collect the rents.

17. On January 26, 1982, Roosevelt filed a request for relief from the automatic stay.

18. On April 28, 1982, this Court entered an order allowing Roosevelt relief from the automatic stay.

■ The principal question facing the Court in this case is whether the Trustee-in-Bankruptcy or a secured creditor holding an assignment of rents is entitled to rents that accrued post-default. The facts and law applicable to this case make it clear that the secured creditor is entitled to the rents, but only after the time that it demanded that the rents be sequestered. In this case, Roosevelt is entitled to any rents collected after November 9, 1981.

The first question that must be faced by this Court is whether state or federal law governs the entitlement to the rents. The United States Supreme Court in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), holds that the questions of entitlement to rents collected during the period between the mortgagor's bankruptcy and the foreclosure sale is to be determined by the law of the state where the property is located. The Supreme Court in *Butner* also notes that the Bankruptcy Court should take whatever steps are necessary to ensure that the parties have the same rights they would have under state law if no bankruptcy had ensued. The application of state law to a situation such as this is consistent with the long-held bankruptcy axiom that "no one should benefit from the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). An application of state law is also consistent with § 552(b) of the Bankruptcy Code which states that a pre-petition security interest in rents extends to post-petition rents. "... [T]o the extent provided by such security agreement and by applicable nonbankruptcy law, ..." Roosevent's contention that *Butner* requires a two-step analysis in determining the entitlement to rent proceeds is simply erroneous.

■ The question that faces the Court at this point is the effect of Illinois law upon the actions of the parties in this case. Roosevelt correctly points out that Illinois

is considered to be a "title" state. In a pure title state, a mortgagee comes into possession of the mortgaged res immediately upon the default of the mortgagor. Illinois is not, however, a "pure" title state. The long standing statement of Illinois law is that "the mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee." *Rohrer v. Deatherage*, 336 Ill. 450, 454, 168 N.E. 266, 268 (1930). The difference between this statement of the law and a "pure title" statement is more than just a difference in semantics. Under a "pure title theory" it is clear that Roosevelt would be entitled to the rents immediately upon default. Under the Illinois approach, however, some additional action must be taken. *In the Matter of Michigan Avenue National Bank*, 2 B.R. 171 (Bkrtcy.N.D.Ill., 1980); *Wolf v. DeWolf & Company*, 53 F.2d 999 (7th Cir. 1931).

The long-standing Illinois rule is that the party in possession is entitled to the rents. *Williams v. Marmor*, 321 Ill. 283, 151 N.E. 880 (1926); *Shinnick v. Goodman*, 259 Ill.App. 107 (1930). The Trustee is clearly the party-in-possession of the premises pursuant to § 541 of the Bankruptcy Code, especially in light of § 541(a)(6). As the party-in-possession, the Trustee is entitled to the rents until such time as some affirmative action is taken by the mortgagee.

The question that faces the Court at this time is what form that affirmative action must take. The *Michigan Avenue* court suggests a "second step" of possession, or having a receiver appointed. 2 B.R. 171, 181. The Trustee's brief cites three forms of affirmative action that may be taken: (1) obtain the appointment of a receiver to collect the rents for the benefit of the mortgagee; (2) petition the Bankruptcy Court for an order of sequestration; or (3) secure the Bankruptcy Court's consent to institute foreclosure proceedings. *Matter of Kent & Sherman*, 19 C.B.C. 474 (S.D.N.Y., 1978).

In this case, Roosevelt did not formally petition the Bankruptcy Court for an order of sequestration, but it did demand that the Trustee set apart the rents or that the Trustee turn the rents over to the Trustee. This is enough of an affirmative action, under Illinois law, to entitle Roosevelt to the rent proceeds from the date of the demand. This is especially true in light of the on-going nature of the discussions of the parties concerning the possibility of a sale of the property to a mutually agreeable buyer in order to satisfy the note of Roosevelt.

In this particular case, this would mean that the Trustee is entitled to all of the rents he collected before November 9, 1981, and that Roosevelt is entitled to the rents collected after November 9, 1981.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Trustee turn over to Roosevelt Federal Savings and Loan Association all rents collected by him after November 9, 1981, from the shopping center in Flora, Illinois.