In the Matter of John D.
GOTTA, Debtor.

The EXCHANGE NATIONAL BANK
OF CHICAGO, Plaintiff,

v.

John D. GOTTA, Defendant.

Adv. No. 84–0306–11.

United States Bankruptcy Court,
W.D. Wisconsin.

March 1, 1985.

C. Scott Pryor, Howard, Peterman, Eisenberg, Solochek & Nachban, S.C., Milwaukee, Wis., for plaintiff.

Virginia M. Bartelt, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for defendant.

## ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

On September 1, 1982, John D. Gotta ("Gotta") signed a note to Exchange National Bank of Chicago ("Exchange") in the principal sum of $720,000 plus interest at the rate of 2% over prime. The note was secured by a second mortgage on property located in Beloit ("Northgate Plaza"). An assignment of rents (the "assignment") was executed in conjunction with the mortgage, which itself included an assignment

of rents. The assignment was by its terms to become effective only upon Exchange taking possession of the premises. The mortgage assignment of rents was not specific as to the time of its operation other than the "election of the mortgagee and the terms of this mortgage." Gotta failed to pay the note when it became due on June 30, 1983, and is in default. Prior to November 21, 1984, Exchange had not attempted to enforce either assignment of rents.

On November 21, 1984, Gotta filed a petition in bankruptcy under chapter 11. An order for relief was entered, and Gotta has since been a debtor in possession.

On December 4, 1984, Exchange filed a complaint alleging a right to receive the rents collected from Northgate Plaza and seeking an injunction prohibiting Gotta from "using, selling, or leasing the cash collateral [the rents] in which the plaintiff has an interest without the permission of the plaintiff and the authorization of the Court...." In conjunction with the complaint, Exchange filed a motion for a temporary restraining order and a preliminary injunction. Following a hearing on December 5, 1984, this court determined that a temporary restraining order should not be issued pending determination of the motion for preliminary injunction, on the grounds that Exchange had not proved that it had an interest in the rents which caused them to be cash collateral.

On December 18, 1984, Exchange filed motions requesting the appointment of a trustee "in the form and nature of a state-court receiver" to collect the rents and profits collected from Northgate Plaza and apply them to the outstanding balance on the Note. Exchange also sought to require Gotta to account for and turn over all rents and profits collected from Northgate Plaza from the date of filing. For the reasons stated below, this court denies both motions.

■ Exchange has not shown sufficient cause under 11 U.S.C. § 1104 to have a trustee appointed. Pursuant to section 1104(a)(1) a trustee may be appointed on a showing of cause, "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor ... or similar cause...." Exchange has not alleged any of the statutorily listed grounds as cause for appointment of a trustee. Rather, Exchange seeks the appointment of a trustee solely as a means of perfecting its interest in the rents from Northgate Plaza, which was unperfected on the date this bankruptcy case was filed. This is not "cause" under section 1104, but is rather an attempt to avoid the automatic stay provision of 11 U.S.C. § 362(a)(4) and (5).

Exchange cites *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), in support of the proposition that this court should "take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918. In *Butner* the Supreme Court rejected the Seventh and Third Circuits' approaches to dealing with a mortgagee's interest in a bankrupt's rents. Both circuits had granted rent assignees immediate rights to receive rents upon a mortgagor's bankruptcy as a matter of federal law holding that "since the bankruptcy court has the power to deprive the mortgagee of his state-law remedy, equity requires that the right to rents not be dependent on state-court action that may be precluded by federal law." 440 U.S. at 53, 99 S.Ct. at 917. The Supreme Court reversed that result, holding instead that federal bankruptcy courts must look to state law to determine whether an enforceable interest in rents exists; "[i]t does not follow, however, that 'equitable administration' requires that all mortgagees be afforded an automatic security interest in rents and profits when state law would deny such an automatic benefit and require the mortgagee to take some affirmative action before his rights are recognized." 440 U.S. at 56, 99 S.Ct. at 918.

Despite language in *Butner* to the effect that a bankruptcy court must permit whatever steps are necessary to insure that a

mortgagee is able to perfect its interest in rents after a bankruptcy is filed, the holding was much narrower. The Supreme Court held only that a bankruptcy court must look to state law to determine a mortgagee's interest. If that interest is perfected under state law, the bankruptcy court must insure that the mortgagee is afforded the same protection in bankruptcy that it would have been under state law if no bankruptcy had ensued.

> For while it is argued that bankruptcy may impair or delay the mortgagee's exercise of his right to foreclose, and thus his right to acquisition of a security interest in rents according to the law of many States, a bankruptcy judge familiar with local practice should be able to avoid this potential loss by sequestering rents or authorizing immediate state-law foreclosures. Even though a federal judge may temporarily delay entry of such an order, the loss of rents to the mortgagee normally should be no greater than if he had been proceeding in a state court: for if there is a reason that persuades a federal judge to delay, presumably the same reason would also persuade a state judge to withhold foreclosure temporarily. *The essential point is that a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law.*

1. The broad jurisdiction granted to the bankruptcy courts under the bill is coupled with other changes proposed in current bankruptcy law and practice.... The two most important are the change in status of the bankruptcy judges, and the separation of the administrative and judicial functions of the bankruptcy judge....
The second change is essential if bankruptcy courts are to become fair and unbiased fora.... Without the separation of administrative and judicial functions proposed by the bill, an expansion of jurisdiction would work to the severe disadvantage of all adverse litigants against the estate.
5 NORTON BANKR.LAW.PRAC., *Legislative History* 1141 (1983).

440 U.S. at 56–57, 99 S.Ct. at 918–919 (emphasis added).

■ The Supreme Court did not address nor did it appear to consider the automatic stay provisions of the Bankruptcy Act of 1898. Under then Bankruptcy Rule 11–44 relief from stay was set in general equitable provisions; "[t]he court may, for cause shown, terminate, annul, modify or condition such stay." To the extent it was considered, the Supreme Court appeared to presume the operation of a court with general administrative obligations in bankruptcy cases and wide latitude in the exercise of its discretion to lift the automatic stay. But the 1978 Bankruptcy Code, which recast the bankruptcy court as a more purely judicial forum restrained from general administration of reorganizations,[1] stays the perfection of liens.

■ Section 362(a)(4) and (5) provide that the filing of a bankruptcy petition operates as a stay of any act to "create, perfect, or enforce" any lien against property of the estate or the debtor. Any post-petition attempt to perfect a security interest violates the automatic stay and is void and of no effect. *In Re Oxford Royal Mushroom Products, Inc.*, 39 B.R. 948, 949 (Bankr.E.D.Pa.1984); *see also In Re Munsey Corporation*, 10 B.R. 864, 866, 7 B.C.D. 674 (Bankr.E.D.Penn.1981); *In Re Bailey*, 20 B.R. 906, 913 (Bankr.W.D.Wis. 1982). The 1978 Code also specifically addresses conditions which must be met in order to grant relief from that automatic stay.[2] When properly sought by a mort-

2. 11 U.S.C. § 362(d) states,
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

gagee with an unperfected security interest in rents, a bankruptcy judge may authorize immediate foreclosure by lifting the automatic stay if the specific requirements of section 362(d)(1) or (2) are met.

▮ In addition, an exception from the automatic stay is specified for the perfection of certain liens under 11 U.S.C. § 362(b)(3) and 11 U.S.C. § 546(b) or 11 U.S.C. § 547(e). Those sections permit perfection of interests which are effective against an entity acquiring rights in the property prior to perfection, such as mechanics' liens, and provide exceptions to the general rule stated in 11 U.S.C. § 362(a)(4) that the filing of a petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." If perfection of a lien has no retroactive effect it does not fall within the section 546(b) exception. *In Re Electric City, Inc.*, 43 B.R. 336, 11 C.B.C. 895 (Bankr.W.D.Wa.1984).

▮ Perfection of a security interest in an assignment of rents has no retroactive effect. Unless the assignee perfects his/her interest in rents and profits, a prior right in the rents may be acquired by a third person, *Woodworth v. Blair*, 112 U.S. 8, 5 S.Ct. 6, 28 L.Ed. 615 (1884); *Emerson v. European and N.A.R. Co.*, 67 Me. 387, 24 At. 39 (1877), such as a junior assignee who first takes action to reduce the rents and profits to his/her possession, or a creditor who obtains a lien thereon by judicial process, *American Bridge Co. v. Heidelbach*, 94 U.S. 798, 4 Otto 798, 24 L.Ed. 144 (1876), *Gilman v. Ill. & Miss. Tel. Co.*, 91 U.S. 603, 1 Otto 603, 23 L.Ed. 405 (1875).[3] This is true whether the interest in rents constitutes an assignment or a pledge.[4] *In Re Pine Lake Village Apt. Co.*, 17 B.R. 829 (Bankr.S.D.N.Y.1982). Although there are no Wisconsin cases specifically addressing the issue, the cases in states having otherwise similar mortgage and assignment laws support the conclusion that the assignments in question have no retroactive effect and are not within the exemption from section 362(a) afforded to liens which relate back.

To interpret *Butner* as Exchange asks would be to carve out an exception from the automatic stay provisions of section 362(a), not included in section 362(b), which would apply only to assignments of rents. Exchange gives this court no reason to treat assignments of rents any differently from other security interests. If Congress had wished to distinguish assignments of rents by granting an exemption from stay, it would have so provided in the Code,

---

**3.** *See also* 4 A.L.R. *Mortgage—Provision as to Rents and Profits* 1405 ("The great weight of authority as regards all these various forms of pledges is to the effect that the mortgagee does not thereby acquire a lien on the rents and profits, which prevents a subsequent lien from acquiring priority in the absence of some action on his part to reduce the rents and profits to his possession."); 55 Am.Jur.2d *Mortgages* § 217 ("Such priority, which a junior mortgagee obtains in rents and profits by his superior deligence in seeking the appointment of a receiver is held not to be effected by the fact that the second mortgage is by its terms expressly made subject to the first mortgage.").

Thus, an assignee who perfects his/her interest in rents is entitled only to those rents accruing after the date of perfection. *Franzen v. G.R. Kenney Co.*, 218 Wis. 53, 259 N.W. 850 (1935); *In Re Southern Gardens, Inc.*, 39 B.R. 671, 11 B.C.D. 1273 (Bankr.S.D.Ill.1982); *In Re Flower City Nursing Home, Inc.*, 38 B.R. 642 (Bankr.W. D.N.Y.1984), *In Re DiToro*, 17 B.R. 836, 8 B.C.D.

1057 (Bankr.E.D.Pa.1982); *Hart v. Ed-Ley*, 482 P.2d 421 (Colo.App.1979) citing *Megginson v. Hall*, 111 Colo. 104, 137 P.2d 411 (1943). Before perfection, the rents and profits belong to the assignor, who need not account for them to the assignee. *United States Trust Company v. Wabash Western Railroad*, 150 U.S. 287, 14 S.Ct. 86, 37 L.Ed. 1085 (1893); *Freedman's Savings and Trust Co. v. Shepherd*, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888); *Sage v. Memphis & L.R. Co.*, 125 U.S. 361, 8 S.Ct. 887, 31 L.Ed. 694 (1888); *Dow v. Memphis & L.R. Co.*, 124 U.S. 652, 8 S.Ct. 673, 31 L.Ed. 565 (1887).

**4.** Note, however, that in "title theory" states where an interest in rents included in a mortgage is considered a true "assignment," rather than a pledge as it is considered in "lien theory" states, the mortgagee is automatically entitled to a secured interest in the rents upon the mortgagor's default. Perfection of the security interest, then, would take place upon default. *In Re Epco Newport News Associates*, 14 B.R. 990 (Bankr.S.D.N.Y.1981).

given the opportunities Congress has had to address the problem.[5]

In *Butner,* a mortgagee asserted a security interest in rents from the debtor's mortgaged premises. The lower court held that the mortgagee's interest in rents was invalid under North Carolina law. The Supreme Court refused to rule on that issue, but explained,

> the Court of Appeals assumed that a request to the Bankruptcy judge for sequestration of rents, for the appointment of a receiver, or for permission to proceed with a state-court foreclosure would have satisfied the state-law requirement. Since none of these steps was taken during the bankruptcy, the Court of Appeals held that the petitioner had no right to the rents.

440 U.S. at 57, 99 S.Ct. at 919.

In a similar case the Fifth Circuit Court of Appeals cited *Butner* in ruling that under Texas law a holder of an Assignment of Rents did not have a right to receive rents paid during bankruptcy when he failed to perfect his interest in those rents by taking possession of the rents or by seeking appointment of a receiver. *In Re Village Properties, Ltd.,* 723 F.2d 441 (1984). The court suggested that if the creditor had properly petitioned the bankruptcy court for the appointment of a receiver to collect rents for him during the bankruptcy he would have a right to the rents which would be superior to the bankruptcy estate. The court explained that Texas courts follow the common law rule that assignments of rent are perfected when, "the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, *or takes some other similar action,"* 723 F.2d at 443 (emphasis added). The court further explained;

> Giving undue weight to the procedural form of the affirmative action required by Texas law would handicap a mortgagee under the Bankruptcy Code. For example, section 105(b) of the Code prohib-

its appointment of a receiver.... The logical solution is to perfect the Texas mortgagee's interest when he *petitions* for sequestration, a receiver ... etc. Although some states hold that perfection should occur only upon actual possession we believe that the 'or takes some other similar action' language in *Taylor* encompasses perfection of a mortgagee's interest by petitioning for sequestration and the like.

723 F.2d at 446 (footnote omitted) (emphasis added).

 Wisconsin law, unlike Texas and apparently North Carolina law, provides that an assignment of rents executed contemporaneously with a mortgage is not a perfected security interest until the mortgagee obtains possession either by a peaceable yielding up of possession or by a petition for *and* appointment of a receiver. *Wuorinen v. City Federal Savings & Loan Association,* 52 Wis.2d 722, 191 N.W.2d 27 (1971); *Dick & Reuteman Co. v. Jem Realty Co.,* 225 Wis. 428, 274 N.W. 416 (1937); *First Wisconsin Trust Co. v. Adams,* 218 Wis. 406, 409–10, 261 N.W. 16 (1935); *Grether v. Nick,* 193 Wis. 503, 512, 213 N.W. 304, 215 N.W. 571 (1927). The Wisconsin Supreme Court in *Lincoln Crest Realty v. Standard Apt. Devel.,* 61 Wis.2d 4, 211 N.W.2d 501 (1973), while analyzing the perfection of a pledge of rents and profits made to secure a lease, held that an assignment of rents can also be perfected upon the happening of an event clearly expressed in a security agreement. Thus, in order to have an interest in rents Exchange must have perfected its interest using one of the three methods under Wisconsin law prior to Gotta's bankruptcy filing. Exchange had not obtained possession of the mortgaged premises. It had only requested that a receiver be appointed to collect rents. Wisconsin law unlike the state law discussed in *Butner* and *Village Properties* requires actual appointment of a receiver for perfection.

---

**5.** Congress has passed extensive amendments (1984) since *Butner* was decided. *See* Bankruptcy Reform Act of 1978, P.L. 95–598 and Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353.

Finally, neither the assignment nor the mortgage is effective upon the happening of an event certain. The assignment provides that Exchange is entitled to rents only after obtaining actual possession of the mortgaged premises. That right of possession is provided for by the terms of the mortgage. Since enforcement of the mortgage is stayed, so also must be the right of possession which triggers the assignment. The mortgage grants Gotta the "privilege of collecting and retaining the rents ... until such time as Mortgagee shall elect to collect such rents pursuant to the terms and provisions of this Mortgage." Since the mortgage does not clearly express an event entitling Exchange to the rents, possession remains the sole means to perfect the assignment. *Lincoln Properties.*

Exchange argues that it is entitled to an accounting for and turn over of all rents and profits collected from Northgate Plaza from the date of filing, as cash collateral, pursuant to 11 U.S.C. § 363(c)(4). However, an entity has an interest in cash collateral under the Code only when it has a perfected security interest in that cash. *Village Properties*, 723 F.2d at 445. Certainly Exchange has an interest in the real property from which the rents have been obtained by virtue of its mortgage. That interest is entitled to protection under 11 U.S.C. § 363. But that protection may be afforded by means other than the turnover of rents, so long as whatever means of protection employed is adequate under 11 U.S.C. § 361. If other means of protection are found to be inadequate relief from stay to perfect the assignment of rents may be granted. But absent such a showing, the stay remains in force.

Whether a security interest has been perfected is a matter to be determined by state law. *Butner*, 440 U.S. at 54, 99 S.Ct. at 917; *Village Properties*, 723 F.2d at 445. Exchange, having failed to perfect a security interest in the rents under the Wisconsin law prior to the filing of the bankruptcy petition, and being prohibited by the automatic stay provisions from perfecting a security interest post-bankruptcy, has no interest in cash collateral to which the provisions of section 363 of the Bankruptcy Code would apply. Because the provisions of section 363 do not apply, Exchange is not entitled to an order prohibiting the use of the rents by the debtor.

Upon the foregoing it is

ORDERED that the plaintiff's motions are denied.