**In the Matter of A.W.H. OF WISCONSIN, INC., Debtor.**

**Victor L. LEBEN, Janet Leben, Plaintiffs,**

v.

**Asher RABIN, Trustee, Defendant.**

**Bankruptcy No. 82–00097.**
**Adv. No. 83–0728.**

United States Bankruptcy Court, E.D. Wisconsin.

Feb. 23, 1987.

Robert L. Mann, Kohner, Mann & Kailas, S.C., Milwaukee, Wis., for defendant.

Seymour Pikofsky, Franks & Pikofsky, Milwaukee, Wis., for plaintiff.

C.N. CLEVERT, Bankruptcy Judge.

Victor and Janet Leben brought this adversary proceeding to obtain possession of two parcels of real estate, payment of past due rent and payment of past due real estate taxes from Asher Rabin, Chapter 11 trustee of A.W.H. of Wisconsin, Inc. (f/k/a A.W. Huss Co.). During the pendency of this suit, the Lebens have obtained possession and clear title to the property through a land contract foreclosure action in the Circuit Court for Waukesha County, Wisconsin. Consequently, this court is only required to determine the Lebens' entitlement to payments from the Chapter 11 estate for past due rent and taxes.

## FACTS

On August 29, 1980, plaintiffs, Victor and Janet Leben, sold two parcels of real estate to Lawrence and Hedi Jo Gubocki by means of a land contract. To secure their performance under the land contract, the Gubockis assigned to the Lebens the rents [1] which would become due to them under a contemporaneously executed triple net lease of the property to the A.W. Huss Co. For unexplained reasons, the Lebens also retained keys to the premises.

On January 18, 1982, the A.W. Huss Co.[2] filed a Chapter 11 petition and continued to occupy the real estate as debtor in possession until Asher Rabin was appointed trustee on May 19, 1982. After Rabin took possession of the property, the Lebens notified him that the Gubockis failed to make their May land contract payment. Although the Lebens never demanded that Rabin pay them rent on behalf of the A.W. Huss Co. or the Gubockis, Rabin nonetheless paid the Lebens $7,839.04 per month from June, 1982, to February of 1983. That sum was less than the $300.00 daily rent Rabin collected from subletting the premises between November 6, 1982, and June 21, 1983, and the $11,000 per month payable by the A.W. Huss Co. to the Gubockis under the lease; however, it was equal to the land contract payments due to the Lebens from the Gubockis.

On or about October 3, 1983, the trustee was authorized to reject the lease between the A.W. Huss Co. and the Gubockis. Following that, the Lebens filed a land contract foreclosure action in which the Waukesha County Circuit Court appointed a receiver. The strict foreclosure action concluded with the circuit court confirming title to the premises in the Lebens and finding that all sums paid on the land contract had been forfeited as rent and damages for breach of contract.

## DISCUSSION

Whether the Lebens have a right to collect from the debtor's Chapter 11 estate is

---

1. The "Assignment of Lease" executed by the Gubockis states:

   Assignor hereby assigns, transfers, sets over and conveys unto Assignee, their successors and assigns all rents as they accrue under the lease as collateral security for performance by Assignor of its duties under the above-described land contract, including, but not limited to, payment of the purchase price in full. Assignor hereby authorizes Assignee, at its option, at any time after default shall occur under the terms and provisions of this Assignment or of the land contract and during the continuance of such default without making entry upon the property and upon notice to the A.W. Huss Company to collect and receive all rents payable under the lease and all other benefits to be derived therefrom and to hold and receive them unto Assignee. This Assignment shall constitute a direction and full authority to the A.W. Huss Company to pay upon demand by Assignee all such rents and other benefits to Assignee or to whomsoever they shall empower. Assignee shall, after payment of all proper charges and expenses, credit the net amount of income which may be received by virtue of this Assignment to any amount due Assignee from Assignor under the land contract.

   In no event shall this Assignment operate to impose any duty or obligation upon Assignee to demand, sue for or make collection of any rents or other sums from time to time due and owing by the A.W. Huss Company under the lease.

2. The debtor changed its name to A.W.H. of Wisconsin, Inc., after completing a court approved asset sale.

a matter of state law. *In re Johnson*, 62 B.R. 24, 28 (Bankr. 9th Cir.1986) citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Excellency Homes*, 72 B.R. 5, 6 (Bankr.E.D. Wis.1985); *In re Gotta*, 47 B.R. 198, 201 (Bankr.W.D.Wis.1985).

In *In re Excellency Homes*, Badger Savings Association (Badger) held mortgages on three parcels of real estate at the time the debtor filed its Chapter 7 petition. Despite assignment of rent clauses in each mortgage, Badger took no action to obtain possession of the property and allowed the trustee to collect the rent. After the properties were sold by the trustee and Badger received less than the sums owed on its mortgages, Badger asked the court to direct the trustee to turn over the rents previously collected.

In Judge Ihlenfeldt's decision denying Badger's request for failure to perfect its rent assignment, he observed that

> [u]nder Wisconsin law, the right to rents generally remains with the mortgagor, notwithstanding an assignment of rents to the mortgagee, until the mortgagor is deprived of possession. *Wuorinen v. City Federal Savings and L. Assoc.*, 52 Wis.2d 722 [191 N.W.2d 27] (1971). The mortgagee may acquire the right to possession by the terms of the contract, but a clause making the assignment operative 'in the case of an event of default' lacks sufficient specificity to be enforceable. ' * * * (a) [sic] default will only activate the right to rents and profits when the exact default is clearly defined and when requisite action has been taken under a specific provision that gives the right to the rents.' *Lincoln Crest Realty v. Standard Apt. Devel.*, 61 Wis.2d 4, 14, 211 N.W.2d 501 (1973).

*Id.* at 2.

Similarly, in *In re Gotta, supra,* Judge Martin observed that

> [a]n assignment of rents executed contemporaneously with a mortgage is not a perfected security interest until the mortgagee obtains possession either by a peaceable yielding up of possession or by a petition for *and* appointment of a receiver ... [A]n assignment of rents can also be perfected upon the happening of an event clearly expressed in a security agreement.

47 B.R. at 203 (citations omitted; emphasis in original).

In view of the above cited authorities, it must be determined whether (1) the Lebens obtained peaceable possession of the leased premises; (2) whether there was a timely appointment of a receiver; and, (3) whether the Lebens have proven that their security agreement cites an event which triggered an assignment of rents.

**1. DID THE LEBENS OBTAIN POSSESSION OF THE LEASED PREMISES?**

The answer to this question is clearly no. From the time the petition was filed on January 18, 1982, until the trustee rejected the lease on October 3, 1983, possession of the leased premises was retained by the A.W. Huss Co. as debtor in possession or Asher Rabin as Chapter 11 trustee. Even though the Lebens retained possession of keys to the premises after the land contract was entered in 1980, that is not enough to show that they "exercised the dominion and control over the property that is usually and ordinarily exercised by a landlord." *Citizens Sav. and Trust Co. v. Rogers*, 162 Wis. 216, 227, 155 N.W. 155, 159 (1916). Furthermore, the automatic stay imposed by 11 U.S.C. § 362(a) precluded the Lebens from taking possession of the property until relief from the automatic stay was granted by the court or the property was no longer part of the estate. Because the former did not occur, and the trustee did not relinquish possession of the property until after the lease was rejected, the Lebens cannot establish the requisite possession of the leased premises necessary to perfect their rent assignment.

**2. WAS THERE A TIMELY APPOINTMENT OF A RECEIVER?**

This question must be answered no, because a receiver was not appointed until October 26, 1983, several weeks after Ra-

bin rejected the subject lease. As the court observed in *In re Gotta, supra,* the "[p]erfection of a security interest in an assignment of rents has no retroactive effect." 47 B.R. at 202. Therefore, because a receiver was not appointed until after the lease had been terminated, the appointment did not perfect the Lebens' right to rents under the lease.

3. WAS AN EFFECTIVE RENT ASSIGNMENT TRIGGERED BY AN EVENT CLEARLY EXPRESSED IN THE SECURITY AGREEMENT?

In the case at bar, the operative provision in the "Assignment of Lease" activates the right to rents "at any time after default shall occur under the terms and provisions of the assignment or of the land contract ... upon notice to the A.W. Huss Co. ... [and] upon demand by Assignee." Because a default under the lease is not further defined and it is unclear what would trigger the Lebens' right to rents, the court must conclude that the default provision is unenforceable for lack of specificity. However, even if the provision were enforceable, the Lebens did not demand that the debtor, the Gubockis or the trustee pay them rent as required by the default provision. Consequently, the Lebens' right to collect rents was not perfected by the terms of their security agreement.

Based on the foregoing conclusion, it is doubtless that the Lebens failed to perfect their right to rents under the rent assignment and that their claim in this case must be denied.