John R. Liss and Louis D. Glanz, Trustee, Appellees, v. Morton E. Harris et al., Defendants. Morton E. Harris and Estelle F. Mayer, Formerly Known as Estelle F. Eckstein, Appellants.

Gen. No. 40,909.

174

Heard in the second division of this court for the first district at the October term, 1939. Opinion filed February 23, 1940.

AARON SOBLE, of Chicago, for appellants; MAX CHILL and JEROME S. KLEIN, both of Chicago, of counsel.

PHILIP J. O'MAHONY and CLARENCE A. WILLIAMS, both of Chicago, for appellees; CLAUDE J. DALENBERG, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

On July 2, 1935, John R. Liss, and Louis D. Glanz as trustee, filed their complaint for foreclosure of a trust deed executed by Lena Fischman in 1922, wherein certain improved property in Cook county was conveyed to the trustee to secure her promissory notes in the principal sum of $10,000. Some two years prior to the filing of the complaint defendants Morton E. Harris and Estelle F. Mayer had acquired the equity of redemption from Lena Fischman by purchase without assuming the mortgage indebtedness, and they were made defendants in the foreclosure proceeding. During the pendency of the proceeding and before sale a receiver was appointed to collect the rents and he continued in possession during the entire period of redemption, without an order for continuance of the re-

ceivership after sale. The property was finally sold pursuant to a decree of foreclosure, leaving a deficiency of $4,107.65, and although the master's report of sale showing the deficiency was confirmed by the court no deficiency decree was entered at that time. Two months after the expiration of the period of redemption the court approved the receiver's final report showing a balance on hand of $773.93, and over the objection of defendants Harris and Mayer directed the receiver to pay the moneys collected by him during the period of redemption to the trustee on behalf of the holders of the notes. Lena Fischman was dismissed from the proceeding before the cause was heard by the master and defendants Harris and Mayer, as owners of the equity of redemption claiming the moneys in the hands of the receiver, have prosecuted this appeal from the order thus entered.

The trust deed executed by Lena Fischman in 1922 conveyed to Glanz as trustee the real estate described therein, together with all improvements located thereon, as well as "all rents, issues and profits of said premises," and provided that

"The grantor waives all right to the possession of and income from said premises, pending such foreclosure proceedings, and until the period of redemption from any sale thereunder expires, and agrees that upon the filing of any bill to foreclose this trust deed, a receiver shall and may at once be appointed to take possession or charge of said premises, and collect such income, and the same, less receivership expenditures, repairs, insurance premiums, taxes, assessments and his commissions, to pay and apply upon the amount which may be found due said complainant, and to apply the balance upon any deficiency which may arise from such sale."

In their bill of complaint plaintiffs allege that the annual income from the mortgaged property was insufficient to meet the current operating expenses and

interest due on the indebtedness; that in the event of a sale under decree the property would not bring an amount in excess of $9,500; that the property constituted scant and inadequate security for the indebtedness and the taxes then in arrears; that the trust deed provided for the appointment of a receiver pending the foreclosure and during the period of redemption; and plaintiffs ask "that a receiver be appointed for the mortgaged property with all the powers usually granted to receivers in like cases," and "that in case the proceeds from said sale be not sufficient to pay in full the amounts found to be due, a deficiency decree may be entered for the benefit of the holders of the indebtedness and against such of the defendants as may be found to be personally liable, and that execution may issue thereon," and "that plaintiffs may have such other and further relief as equity may require."

After defendants had filed their answers and a counterclaim, which is not the subject of controversy herein, the cause was referred to a master and a decree of foreclosure entered November 23, 1937, finding an aggregate indebtedness of $11,900. The decree provided that Glanz, as trustee for the benefit of the holders of the notes set forth in the decree, had "a valid and subsisting lien upon said premises and the rents, issues and profits thereof for the sum of $11,900.00; that the lien held by plaintiffs — Louis D. Glanz as Trustee and John R. Liss — . . . for the benefit of the holders of said notes . . . is prior and superior to the rights of all of the defendants hereto other than the holders of said notes." The decree ordered the master to make a sale of the premises and to distribute the net amount realized from the sale to plaintiffs herein, "and if such remainder shall not be sufficient to pay the amount and the interest, said master shall apply the same to the extent to which it may reach in satisfaction thereof, and shall state the amount of deficiency in his report of sale."

The master reported a deficiency of $4,107.65 and recommended that a deficiency decree be entered for that amount. The sale was approved December 21, 1938, by a short draft order finding "that the master in chancery in every respect proceeded in due form of law in accordance with the terms of said decree, and that said sale was fairly made; and the court being fully advised in the premises, Doth Order, Adjudge and Decree that the proceedings, sale and report of said Master in Chancery be, and the same is hereby, approved and confirmed." No mention is made in the order of the deficiency reported by the master, nor was any provision made for continuing the receivership during the period of redemption. Nevertheless, the receiver continued to collect the rents during the period of redemption, and on June 20, 1939, the court approved his final report and distribution of the proceeds.

Prior thereto, May 5, 1939, after the period of redemption had expired, defendants Harris and Mayer field a petition in which they alleged in substance that they had acquired title to the property under foreclosure by warranty deed dated March 7, 1933, and were the owners of the equity of redemption; that a receiver had been appointed February 6, 1937, who had continued to collect the rents during the redemption period; that a decree of foreclosure had been duly entered, and the sale and distribution of proceeds approved, but that no deficiency judgment had ever been entered against the rents, issues and profits of the premises, nor against any of the parties personally liable upon the mortgage indebtedness; that the period of redemption had expired, leaving in the hands of the receiver the sum of $773.93, as shown by his final account; and the petition asked for an order directing the receiver to turn over that sum to defendants and that he be discharged.

Liss, and Glanz as trustee, answered the petition, admitting many of the principal allegations and aver-

ring that the master's sale left a deficiency of $4,107.65 remaining due to the holders of the notes, for which they claimed a lien on the rents, issues and profits remaining in the hands of the receiver; they denied defendants were entitled to the funds remaining in the hands of the receiver, and asked that such funds be applied and paid over to them on behalf of the note holders.

Pursuant to a hearing of the petition and the answer of plaintiffs thereto, the chancellor entered the order from which this appeal is prosecuted, finding *inter alia* that a foreclosure decree had been entered November 23, 1937, wherein plaintiffs for the benefit of the holders of the notes secured by the trust deed were found to be entitled to recover the amount of $11,900; that Glanz as trustee was found by the foreclosure decree to have a valid and subsisting lien upon the premises foreclosed and the rents, issues and profits thereof, to the extent of $11,900; that a sale had been had January 21, 1938; that from the master's report of sale which had been filed and approved, it appears that there was a deficiency of $4,107.65 due to the holders of the notes; that Glanz as trustee had a first and prior lien upon the rents collected during the period of redemption; and finding that the petition of Harris and Mayer was without equity, it was ordered that their petition be denied.

The question presented is whether, under the existing circumstances, the failure of the mortgagees to procure the entry of a deficiency decree after sale will deprive them of their contractual right to have the moneys, collected by the receiver during the period of redemption, applied toward payment of the deficiency. The owners of the equity take the position that a pledge of rents gives the mortgagee a right to them only after the deficiency is ascertained and a deficiency decree is entered; that neither the decree of foreclosure nor the appointment of a receiver operates *ipso*

*facto* as an award of the rents and profits in the event of a deficiency; that since no deficiency decree was entered the lien on the rents pledged in the trust deed never matured into judgment; and it is argued that although the mortgagees had a right to a lien under the provisions of the trust deed, they could assert that right only by taking affirmative steps to mature it into a lien through the entry of a deficiency decree.

In support of their contentions the owners of the equity rely on *Fidelity Trust & Savings Bank v. Ahlgrim,* 278 Ill. App. 147; *Chicago Title & Trust Co. v. Suter,* 287 Ill. App. 162; *Owsley v. Neeves,* 179 Ill. App. 61; *Shinnick v. Goodman,* 259 Ill. App. 107. In the *Ahlgrim* case the trust deed contained a provision pledging the rents, issues and profits as well as the real estate as security for the indebtedness. The mortgagor defendants not being found service as to them was had by publication. The decree of foreclosure made provision for a conditional deficiency and vested the court with jurisdiction for the 15-month period of redemption for the purpose of satisfying the deficiency out of the rents, issues and profits. After sale, a deficiency decree was entered and it was ordered that plaintiff should have execution for the amount of the deficiency as upon a judgment at law and that the receiver should remain in possession for the purpose of collecting the rents for the period of redemption and to apply them on the deficiency. Defendant, who had become the owner of the equity after the execution of the trust deed, insisted that the chancellor had no power to fix a lien on the rents and profits and to enter a deficiency decree where the makers of the note and trust deed were not before the court on personal service or by entry of their appearances. The court held, however, that under the authority of ch. 95, par. 17, Cahill's Ill. Stat. for 1933, the chancellor could enter a decree for any balance found due the complainant after sale; that the original owner of the equity and

mortgagor, having pledged the rents, had granted to the mortgagee a right which he could enforce in a court of equity, and "the only way in which this can be done is by the court decreeing the payment of the rents, issues and profits during the period of redemption to the mortgagee until the deficiency has been exhausted or the period of time has elapsed. This is not in the nature of a personal judgment in so far as the rents, issues and profits are concerned, but is an enforcement of the lien granted by the trust deed to an interest in the real estate consisting of the rents and profits derived therefrom." Counsel stresses the language quoted as indicating that the pledge of rents in the trust deed constitutes only a right to a lien, which must be matured by the entry of a deficiency decree, but we think the court merely held that even in the absence of personal jurisdiction over the mortgagor defendants, the mortgagees were entitled under the terms of the trust deed to have applied to the payment of the deficiency found to exist, the rents and profits derived from the real estate conveyed by such trust deed.

In *Chicago Title & Trust Co. v. Suter*, 287 Ill. App. 162, a deficiency decree was entered against Millie A. Suter, one of the defendants, and thereafter set aside because personal service of summons had not been obtained. The vacation of the deficiency decree was entered "without prejudice, however, to the decree entered herein . . . confirming and approving the foreclosure sale and finding a deficiency of $3,372.98 due to the complainant," and "without prejudice to the retention of jurisdiction by the court provided for in said decree . . . for the purpose of examining, auditing and approving the accounts of Chicago Title & Trust Co. as trustee . . . and for the purpose of appointing a receiver for the premises involved . . ." Defendants Louis and Hanna Knaus, who had acquired the equity of redemption, sought to reverse the decree

on the ground that there was no valid deficiency decree in favor of plaintiff as trustee, and they claimed the sum of $3,410, being the proceeds of rents collected by the Chicago Title & Trust Company during the period of redemption. The court held, of course, that since there was no personal service on Millie A. Suter, the order of deficiency entered by the court was erroneous, but that it still had jurisdiction to impress a lien upon the rents and profits collected during the period of redemption for the amount of the deficiency, since the rents were pledged by the trust deed. *Fidelity Trust & Savings Bank v. Ahlgrim, supra,* and *First Nat. Bank of Joliet v. Illinois Steel Co.,* 174 Ill. 140, are cited as supporting this conclusion. In the latter case the trust deed provided that upon the filing of any bill to foreclose the court might appoint a receiver "with power to collect the rents, issues and profits arising out of said premises during the pendency of such foreclosure suit, and until the time to redeem the same from any sale that may be made under any decree foreclosing this mortgage shall expire; and such rents, issues and profits, when collected, may be applied toward the payment of the indebtedness and costs herein mentioned and described." It was there contended that the mortgagee having obtained a decree of foreclosure and sale, and applied the proceeds, the mortgage had accomplished its purpose and become *functus officio,* but the court held that under the clause of the mortgage hereinbefore quoted, "a lien is given, by express words, upon the rents and profits, and such an equitable lien a court of equity will enforce. . . . Had there been no deficiency after the foreclosure sale," said the court, "the rents would have belonged to the owner of the equity of redemption. Under the express agreement in the mortgage, there being a deficiency . . . after the sale, the Illinois Steel Company had an equitable right to have the rents and profits applied toward the payment of the deficiency decree, from the

time of the foreclosure sale until the expiration of the time of redemption, and this right might properly be enforced on an application to the court to appoint a receiver.''

In the case at bar a receiver was appointed *pendente lite* and continued to collect the rents until the expiration of the period of redemption. A similar situation existed in *Bolton v. Starr,* 223 Ill. App. 39, where the appointment of a receiver was based upon the lien on the rents granted by the trust deed, and the court held that the lien was not extinguished by the sale of the land and that an order appointing and directing a receiver to collect the rents until the expiration of the period of redemption was sufficient, without an order for the continuance of the receivership after sale, for the purpose of enforcing the equitable lien.

*Chicago Title & Trust Co. v. Suter,* 287 Ill. App. 162, tends rather to refute than to support the contentions made by the owners of the equity, because in that case after the deficiency decree had been vacated the status of the proceeding was similar to the case at bar, where no deficiency decree was entered after sale; nevertheless, the court recognized the existence of the deficiency after sale and held that under the pledge of the rents in the trust deed the funds in the hands of the Chicago Title & Trust Company should be applied in satisfaction of the amount of the existing deficiency.

In *Owsley v. Neeves,* 179 Ill. App. 61, the trust deed foreclosed pledged the rents and profits during the period of redemption. After sale a deficiency judgment was entered and it was ordered that the deficiency be paid out of the rents held by the receiver. On appeal the question arose whether the rents were rightfully awarded to the mortgagee, and in the course of its opinion the court said (p. 64): ''After the deficiency was established appellees [mortgagees] then for the first time were entitled to an order applying the rents to extinguish their judgment, and they were entitled

to such an order by reason of the express provisions of the trust deed.'' Counsel again stress the language employed by the court in support of their argument that the lien of the trust deed could only be matured by the entry of a deficiency decree, but in our opinion neither the facts nor the decision support this argument.

In *Shinnick v. Goodman*, 259 Ill. App. 107, a dispute arose as to the ownership of funds collected by the receiver during the period of redemption, but the facts and the questions involved are not in any way pertinent to the controversy in this case. A deficiency decree was entered in that proceeding, and counsel for the owners of the equity herein merely emphasize the language of the opinion that ''the mortgagees may take steps to subject the rents to pay the deficiency,'' as an argument that a deficiency decree must be entered after the amount of the deficiency has been determined upon sale.

These cases merely affirm the right which a mortgagee has to the rents and profits pledged together with the real estate as security for the indebtedness. They do not hold, as the owners of the equity contend, that the lien created by the pledge of rents must be matured through the entry of a deficiency decree in order to entitle the mortgagees to rentals collected by a receiver, stipulated for in the trust instrument and placed in possession for the express purpose of collecting the rents to be applied on any deficiency that might exist. In nearly all the foregoing cases a deficiency decree was entered and the questions that arose in those cases are not pertinent to the issue here involved.

Whatever rights the mortgagees in the case at bar acquired arose from the contractual obligations of the parties as expressed in the trust deed. By that instrument the mortgagors conveyed the real estate in question and all improvements thereon, together with ''all

rents, issues and profits to said premises," and waived all right to the possession of and income from the premises pending the foreclosure proceedings, "and until the period of redemption from any sale thereunder expires," and agreed that "upon the filing of any bill to foreclose this trust deed, a receiver shall and may at once be appointed to take possession or charge of said premises, and collect such income and . . . to apply the balance upon any deficiency which may arise from such sale."

Under these provisions of the trust deed the mortgagees were given an equitable lien on the rents as well as on the property itself, and the subsequent sequestration of the rents through the appointment of a receiver was an enforcement of that lien, which was not extinguished by the sale of the land nor satisfied until the period of redemption had expired. Then for the first time the receiver, who had been placed in possession for the sole purpose of carrying out the pledge of rents in the trust deed, was called to account for the moneys collected by him during the period of redemption, and the court awarded the net rentals to the mortgagees, who were rightfully and equitably entitled to them.

The order then entered contained the usual provisions of a deficiency decree, in that it recited the appointment of a receiver, his continuance in possession during the redemption period, the amount found due the plaintiffs under the foreclosure decree, and the extent of the deficiency, and the net sum of $773.93, then remaining in the hands of the receiver, being the proceeds of the rents collected during the period of redemption was awarded to the mortgagees.

Par. 17, sec. 16, ch. 95, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 83.17], provides that "in all decrees hereafter to be made in suits in equity directing foreclosure of mortgages, a decree may be rendered for any balance of money that may be found due to the com-

plainant, over and above the proceeds of the sale or sales, and execution may issue for the collection of such balance, the same as when the decree is solely for the payment of money. And such decree may be rendered conditionally, at the time of decreeing the foreclosure, or it may be rendered after the sale and the ascertainment of the balance due . . ." There is nothing in the statute, in any of the decisions cited, nor in cases that we have been able to find, which indicates that the deficiency decree must be entered at any particular time after the ascertainment of the deficiency, and we see no reason why the determination of the ownership of the funds collected by the receiver under the circumstances of this case could not properly be made after the period of redemption had expired, since no other rights had intervened in the meantime.

A similar situation arose in *Eastern Banking Co. v. Robbins,* 97 Neb. 318, wherein an application for the revivor of a deficiency judgment was made more than 14 years after the foreclosure sale. During that time no effort was made to invoke this remedy, and the court held that on the face of the record the delay was inexcusable and that petitioners were defeated by laches. There is no indication in the opinion, however, that a timely application for a revivor of the deficiency judgment would not have been allowed. In *Davies v. Freund,* 137 N. Y. S. 735, an interlocutory judgment of foreclosure and sale of real estate provided that if there was a deficiency the plaintiff should be entitled to a personal judgment against the obligor upon the bond, but no sale was in fact made because the property had been sold under the foreclosure of a prior mortgage, which resulted in a deficiency. Many years later an application was made under the terms of the interlocutory decree for a deficiency judgment. The defense of laches was there likewise interposed, but the court said that the delay had not resulted in any prejudice to the mortgagor and that the relative situ-

ation of the parties had not in any way been changed, and held that "under these circumstances, mere delay is not considered to effectually bar a remedy, especially since the time within which an action might be brought at law upon the bond—a sealed instrument—has not expired." In the case at bar nothing intervened within the period of two months after the expiration of the period of redemption to alter the situation of the parties. The mortgagees acquired a lien under the provisions of the trust deed, and not a mere right to lien, as the owners of the equity contend. This lien was sufficiently asserted by the appointment of a receiver, and the possession of the proceeds of the receivership by the court was in its receiver until such time as the court awarded the net rentals to the mortgagees, who were rightfully entitled to them.

While we do not commend the procedure followed by the solicitors for the mortgagees, who by exercising ordinary care and following the cutomary procedure in drawing their various orders and decrees could have obviated the necessity of any controversy in this foreclosure, we do not think that their clients' rights were lost by the methods pursued. The decree of the superior court is affirmed.

*Decree affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.