**In the Matter of Henry Robert FULLOP, Debtor.**

**Charles E. JONES, Successor Trustee to Gibson D. Karnes, Trustee, Appellant–Cross–Appellee,**

**v.**

**SALEM NATIONAL BANK, Appellee–Cross–Appellant.**

**Nos. 91–3733 and 91–3782.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1992.

Decided Sept. 21, 1993.

Rehearing and Suggestion for Rehearing En banc Denied Oct. 19, 1993.

Terrell L. Sharp (argued), Mt. Vernon, IL, for Charles E. Jones.

Robert E. Shaw (argued), Mitchell, Neubauer & Shaw, Mt. Vernon, IL, Roger L. Vetter, Jones & Ottesen, Belleville, IL, for Salem Nat. Bank.

Before EASTERBROOK and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

KANNE, Circuit Judge.

"[O]il and gas financing is a strange world of its own." *Woodward v. Wright,* 266 F.2d 108, 115 (10th Cir.1959). In attempting to convert dreams of black gold to hard cash, aspiring capitalists split the property interest in oil into "more fragments than the atom or the rainbow." B. Clark, *The Law of Secured Transactions Under the UCC* ¶ 13.01 at 13–2 (2d ed. 1988). This case requires us to examine the scope of one of those fragments—a lessee's rights under an oil and gas lease—and determine the requirements a secured creditor must meet to perfect its interest in the oil extracted under such a lease. Pursuant to the Bankruptcy Act's "strong arm" powers, 11 U.S.C. § 544(a), the debtor, Henry Fullop, filed and Charles Jones, as trustee, maintained this action seeking to avoid Salem National Bank's lien on oil extracted pursuant to an oil and gas lease. The district court affirmed the bankruptcy court's holdings that the Illinois Uniform Commercial Code (UCC) applied to the oil upon extraction and accounts resulting from its post-petition sale, and that the Bank met the requirements for a perfected security interest under Article 9 of the UCC. We affirm as modified herein.

I. *Background*

Under Illinois law, a fee simple in real property consists of both a mineral estate and a surface estate, which may be severed from each other. *Jilek v. Chicago, Wilmington & Franklin Coal Co.*, 382 Ill. 241, 47 N.E.2d 96, 98 (Ill.1943). The owner of the mineral estate may lease that property right to another for the purposes of exploration and production of oil and gas. The lessee is responsible for the work necessary to produce oil—such as drilling the well, pumping any oil located, and providing storage tanks. The lessee's rights under the oil and gas lease are known as a "working interest." *Illinois Nat. Oil & Gas Co. v. Sinclair*, 373 Ill. 581, 27 N.E.2d 450, 451 (Ill.1940). The working interest includes "the portion of the oil and gas that may be produced from the premises after the royalty for the share paid to the landlord is first deducted." *Bates v. Mansfield*, 212 Ill.App.3d 69, 156 Ill.Dec. 73, 75, 570 N.E.2d 549, 551 (1991). The lessee will often assign this working interest to a financier as collateral for a loan, the proceeds of which will be used for the initial exploration and the subsequent oil production. Once production begins, the lessee may execute transfer and division orders calling for the direct payment of oil sale proceeds from third party purchasers to the lender.

In this case, four types of documents evidenced the relationship between the Bank and the debtor, Henry Fullop.

First, the debtor executed and delivered to the Bank two collateral promissory notes dated February 1, 1985 and totaling over $690,000. One note included a provision which granted the Bank a lien on "Various oil and gas leases, and any and all collateral now or hereafter in the Bank's possession[,] together with all additions, accessions, substitutions, exchanges, proceeds, product, offspring, rents, profits, and all proceeds of any of the foregoing." The other note, through similar language, also created a lien on assignments of various oil and gas leases and also referenced as collateral existing security agreements, dated December 29, 1982 and September 30, 1982.

Second, the Security Agreements granted the Bank an interest in specific assignments of oil and gas leases, which were listed by name and number, and in any future leases acquired by the debtor. For example, the September 30, 1982 Security Agreement provides:

> Henry Fullop ... (hereinafter called Debtor), for valuable consideration, receipt of which is hereby acknowledged, hereby grants and transfers to THE SALEM NATIONAL BANK, Salem, Illinois, (hereinafter called Bank), a security interest in the property described below, together with any and all additions and accessions thereto (hereinafter collectively called Collateral):
>
> Assignments of the following Oil & Gas Leases:

| | |
|---|---|
| Venters-Stanton Comm. 1<br># 52679 | # 741C Thelma Worrell # 1 |
| Rister Comm. # 1<br>10465 | 781C Carl Short # 1 & # 2 |
| Kenneth Short # 1<br>10531 | 800C Carl Short # 3 & # 4 |
| Smothers Comm. # 1<br>23742 | 897C Ralph English # 1 |
| Etienne Comm. # 1<br>3913 | 927C King Mattingly |
| Robinson # 2<br>3932 | 928C King-Carrier |
| Simpson # 1, # 2, & # 3<br>2115 | 975C Elmer Emmerson |
| Unknown | 2123 |

> and any acquired leases in the future.

In a third form of document, the debtor assigned to the Bank his working interest in various oil and gas leases. The following is an example of the assignments of working interests in oil and gas leases:

> KNOW ALL MEN BY THESE PRESENTS: That the undersigned, Henry Fullop, of Carmi, Illinois 62821, hereinafter called Assignor, for and in consideration of Ten and no/100 dollars ($10.00) and other valuable consideration, ... does hereby sell, assign, transfer and set over unto
>
> SALEM NATIONAL BANK for account of Henry Fullop, hereinafter called Assignee, a ⅛th working interest in and to the following described oil and gas leases, covering lands situated in White County, Illinois, to-wit:
>
> 1. Oil & Gas Lease dated April 10, 1980, from Burnedine Etienne and Richard Eti-

enne, her husband ..., Lessors, to Henry Fullop, Lessee, recorded in Book 145, Pages 493–495 of the records of the White County Recorder;

. . . . .

INSOFAR as the above leases cover the following described land; The Southeast Quarter of the Northwest Quarter (SE ¼ NW ¼) of Section Twenty (20), Township Three (3) South, Range Eight (8) East, containing forty (40) acres more or less;

together with the rights incident thereto and the personal property thereon, appurtenant thereto, or used or obtained in connection therewith.

The assignment shall be effective as of the first date of the runs.

The Assignment shall be effective as of September 1, 1981. EXECUTED this 30th day of September, 1981.

s/Henry Fullop.

Some of the assignments appeared as absolute transfers of the working interests. However, others indicated that the assignment to the Bank was for the account of Fullop or contained the following provision: "The proceeds from this interest shall apply to a note to the [Bank] until such time as said indebtedness is liquidated, at which time the [Bank] shall re-assign said interest to [Fullop]." Notwithstanding the language of these documents, the parties agree that the assignments were not absolute, but rather were intended to serve as security for the Bank loans. The Bank recorded the assignments in the real estate records of the counties in which the wellheads of each of the working interests were located.

The oil produced under the leases was purchased at the wellhead by third parties, and, pursuant to the fourth type of document, transfer and division orders executed by the debtor, the proceeds attributable to the debtor's share of the working interest were paid directly to the Bank. The following exemplifies the content of the transfer and division orders:

We, the undersigned, hereby certify and warrant that we have transferred, as indicated below, oil production from the ETIENNE COMM. # 1 located in the County of White, State of Illinois described as follows: SE ¼ NW ¼ Section 20–3S–8E, White County, Illinois Effective September 1, 1981, and until further written notice from either party, Rock Island is authorized to purchase, ... the oil produced from the above lease and to make payments therefor as follows:

To whom transferred:

Salem National Bank A/C Henry Fullop

Division of Interest:

.09570313 [Working Interest]

The Bank applied the funds it received under the transfer and division orders to the notes and remitted the balance to Fullop.

On September 30, 1985, Fullop filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Illinois. This act constituted default under the terms of the notes, and the Bank stopped remitting to him the balance of the oil sale proceeds. Instead, the Bank began paying the operating expenses related to assigned working interests and applying the balance to Fullop's outstanding notes.

Three years later, Fullop, acting as debtor-in-possession, filed an adversary complaint seeking to avoid, under 11 U.S.C. § 544(a)(1), the Bank's liens relating to the oil and gas leases. In particular, the complaint sought to recover post-petition payments made to the Bank by the purchasers of the oil runs. When the bankruptcy proceeding was converted to a Chapter 7 liquidation on January 26, 1989, the appointed trustee was substituted as plaintiff, and he later was replaced by the current trustee, Charles E. Jones.

Under § 544(a)(1) the trustee possesses the same rights as a hypothetical judicial lien holder, which permits him to avoid all liens and security interests that are unperfected at the time of the bankruptcy petition's filing.[1]

1. Section 544(a)(1) provides:
The trustee shall have, as of the commencement of the case, and without regards to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

The trustee conceded that the Bank had a valid and perfected lien on the oil and gas prior to its extraction from the ground, as those interests constitute a real property interest subject to the real estate recording statutes. However, the trustee contended that the Bank's perfected lien did not extend to the gas and oil upon its extraction and the accounts created by its post-petition sale. According to the trustee, the extracted oil constituted personal property, and thus the Bank's lien is subject to the requirements of Article 9 of the Illinois Uniform Commercial Code, 810 ILCS 5/9–101 et seq. The trustee further asserted that the Bank did not meet those requirements with regard to its lien on the extracted oil and the resultant accounts.

The Bank responded with a counter-complaint requesting that the bankruptcy court find that the extracted oil and gas constituted part of the working interest, and as a result, constituted real property, outside the scope of Article 9 of the UCC. The Bank further asserted that even if the UCC applies, the lien documents created a security interest in the extracted oil and their recording in the real estate records met the Article 9 perfection requirements.

The bankruptcy court held that the UCC applies to the oil and gas after extraction, but that by recording in the real estate records the assignments of the working interests in the oil and gas leases, the Bank had met the requirements under Article 9 for perfection of a security interest in the extracted oil and related accounts. *In re Fullop,* 125 B.R. 536 (Bankr.S.D.Ill.1990). The only exceptions were the oil and gas accounts resulting from the Carl Short # 3 and # 4 working interests because their assignment had been recorded more than five years prior to the debtor's bankruptcy and no continuation statement had been filed. *See* § 9–403(2). As a result, the bankruptcy court ordered the Bank to return to the debtor's estate the post-petition payments that it received from the oil purchasers.

The trustee appealed and the Bank cross-appealed to the United States District Court for the Southern District of Illinois. The only issue before the district court was the status of the post-petition payments the Bank received from the sale of oil extracted under the leases. Affirming the bankruptcy court's decision, the district court held that the Bank's liens on this property must meet the requirements for a perfected security interest under Article 9 of the UCC, and that, with the exception of the oil extracted under the Carl Short # 3 and # 4 leases, the assignments filed in the real estate records met those requirements. *In re Fullop,* 133 B.R. 627 (S.D.Ill.1991). The Trustee filed a timely notice of appeal, and the Bank cross-appealed.

## II.

In the appeal before us, the parties again raise the issue of what law governs the perfection of a secured creditor's interest in oil extracted under an oil and gas lease. As earlier discussed, real property may be severed into the mineral estate and a surface estate. An oil and gas lease, in effect, transfers the mineral estate to the lessee by conveying to the lessee the right to enter the land for exploration purposes and reduce to possession any oil or gas located beneath the land. When this right is granted for an indefinite term, the working interest in an oil and gas lease constitutes a freehold estate in real property. *Fry v. Farm Bureau Oil Co.,* 3 Ill.2d 94, 119 N.E.2d 749, 750 (Ill.1954). "[Although] the oil in place is part of the real estate and the right to remove it a 'corporeal hereditament,' but when severed from the soil, it becomes personal property belonging to the owner of the real estate." *Piersol v. Bendum Trees Oil Co.,* 2 F.R.D. 133, 134 (E.D.Ill.1941).

Article 9 of the UCC governs, among others, "any transaction (regardless of its form) which is intended to create a security interest in personal property," § 9–102(1)(a), and does not apply to "the creation or transfer of

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

an interest in or lien on real estate, including a lease or rents thereunder." § 9-104(j). In adopting the UCC, Illinois codified the common law distinction between the character of oil and gas, before and after its extraction, and subjected a security interest in extracted oil and gas to the requirements of Article 9. Section 9-105(1)(h) of the UCC defines "goods" as "includ[ing] all things which are movable at the time the security interest attaches ..., but [excluding] minerals or the like (including oil and gas) before extraction." By negative implication, the oil after extraction constitutes a "good," which in turn makes it personal property. Several other provisions of the UCC acknowledge a distinction between oil and gas prior and subsequent to extraction by specifying particular rules for the perfection of a security interest in the oil and gas upon extraction. *See* §§ 9-103(5), 9-401(1)(b), 9-402(5), and 9-403(7).

These provisions indicate that a security interest in the extracted oil, as personal property, may be perfected by complying with the requirements of Article 9 of the UCC. However, we reject the trustee's argument, as accepted by the courts below, that Article 9 provides the sole means of creating and perfecting a secured creditor's interest in such property. "Under well-established Illinois law, a clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits of the land, which may be enforced by the mortgagee upon default by taking possession of the mortgaged property." *Anna Nat. Bank v. Prather*, 154 Ill.App.3d 6, 107 Ill. Dec. 26, 33, 506 N.E.2d 769, 776 (Ill.App. 1987) (citing *In re Bunting*, 60 F.2d 605 (E.D.Ill.1932); *Stevens v. Blue*, 388 Ill. 92, 57 N.E.2d 451 (Ill.1944); *Liss v. Harris*, 304 Ill.App. 173, 26 N.E.2d 133 (Ill.App.1940); 27 Ill.L. & Prac. *Mortgages* §§ 116-17 (1956)). We hold that this doctrine of real estate law supplies an alternative, albeit limited, means of granting and perfecting a secured creditor's interest in extracted oil and gas.

In *Anna Nat. Bank*, the court discussed the interrelationship between the Illinois UCC and Illinois real estate law. In that case, a borrower executed a mortgage in favor of a bank, thereby giving as security certain farm land including its "rents, issues, proceeds and profits." The borrower had leased the land to a farm tenant, who, in turn, granted another lender a security interest in the soybean crop that was perfected under Article 9 of the UCC. *See* § 9-105(h) (growing crops constitute "goods" under Article 9). Upon the borrower's default on the mortgage, the bank obtained a foreclosure order placing it in possession of the land. The bank also filed a supplementary action seeking a declaration of its rights to the crop of soybeans growing on the property at the time the foreclosure order was entered. Under § 9-312(2), the perfected Article 9 security interest held by the farm tenant's lender had priority over all other Article 9 security interests because it related to the current year's crop. Thus, the court was required to decide whether the Bank's interest in the crops, created by the rents and profits clause in the real estate mortgage, constituted a security interest subject to Article 9.

While a security interest in growing crops may be granted and perfected pursuant to Article 9 of the UCC, the court held that, when a lien arises under a rents and profits clause of a real estate mortgage, real property law provides the requirements for perfection, not Article 9.

> Because, under Illinois law, a "rents and profits" clause in a real estate mortgage conveys no separate right to the crops growing on the land, as would a chattel mortgage or Article 9 security agreement, and because the real estate mortgagee's right to such rents and profits arises only as an incident of foreclosure of the real estate involved, we find that such a clause does not create a security interest in personal property so as to be subject to the provisions of the UCC.... There is no question that growing crops may be the subject of an Article 9 security interest before they have been severed from the land. Indeed, [the mortgagee] could have chosen to secure its loan to the [mortgagor] with an Article 9 security interest on crops "growing or to be grown" on the mortgaged property in addition to a mortgage on the real estate itself. Since [the mortgagee] had no such security interest,

[it] could claim the crops on the mortgaged premises only by foreclosing on its real estate mortgages and taking possession of the property before the crops were severed from the real estate. Thus, [the mortgagor's] interest in the crops was not an Article 9 security interest and should not be so considered.

*Id.* 107 Ill.Dec. at 33–34, 506 N.E.2d at 776–77.

With respect to growing crops, an Article 9 creditor no longer must take a back seat to a mortgagee in possession. *See* 735 ILCS 5/15–1702(f). However, the holding in *Anna* central to the case before us remains the law in Illinois—a lien granted by a rents and profits clause in an agreement conveying an interest in real property is not an interest subject to Article 9 perfection requirements, even though a security interest in the same type of property would be subject to Article 9 when granted independent of real property interests.

Here, the documents executed between Fullop and the Bank created a lien on the extracted oil under real estate law. The note included a provision granting the Bank a lien on real property—the assignments of the working interests in the oil and gas leases. The note further expressly stated that the security interest extended to the "proceeds, product, offspring, rents, [and] profits" of the working interest. The working interest held by Fullop included the right to oil and gas produced from the premises and the proceeds therefrom, less any royalty payment to the lessor.

The property at issue in this case, the proceeds from post-petition oil runs, constituted proceeds of the "product" or the "profits" of the working interest, and therefore were covered by the Bank's lien. *Pheister v. Ogden Smelting & Refining Mills, Inc.,* 364 P.2d 1078, 1083 (Wyo.1961); *Mid-Continent Supply Co. v. Hauser,* 176 Kan. 9, 269 P.2d 453, 457–58 (Kan.1954). *See also* Black's Law Dictionary 747 (5th ed. 1979) ("As applied to real estate, [issues and profits] comprehend every available return therefrom, whether it arise above or below the surface").[2]

Under 11 U.S.C. § 552(a), "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." An exception to this general rule is contained in § 552(b):

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b). One could argue that the extracted oil and its proceeds at issue were actually acquired by the debtor after he filed the petition. See *Updike v. Smith,* 378 Ill. 600, 39 N.E.2d 325, 327 (Ill.1942) (holding an oil and gas lease conveys to the lessee the right to possess any oil produced, but title to the oil does not vest with the lessee until it is found and reduced to possession). *But see In re Hess,* 61 B.R. 977 (Bankr.N.D. Texas 1986) (extracted oil does not constitute after-acquired property under § 552(a) because, even though oil changes from real to personal property as extracted, the lessee's right to the oil remains constant). Under the exception contained in § 552(b), however, even if the extracted oil and resulting accounts constituted after-acquired property, they remained subject to the pre-petition lien as the product or profits of the working interest. *See* B. Clark, *The Law of Secured Transactions Under the UCC* ¶ 13.03 at S13–2 (1992 Supp.).

2. The bankruptcy court found that the oil produced under a working interest did not constitute "rents," but did not address whether it constituted "profits" of the working interest.

Under Illinois law, to perfect its interest in rents and profits, upon the mortgagor's default, the mortgagee must take affirmative action to be placed in possession of the property. *In re J.D. Monarch Development Co.,* 153 B.R. 829, 833–34 (Bankr. S.D.Ill.1993). Once a mortgagee has done so, "he is entitled to future rents [or profits] despite the fact that an intervening creditor has levied the rental income." *In re Gelwicks,* 81 B.R. 445, 447 (Bankr.N.D.Ill.1987) (citing *Stevens v. Blue,* 388 Ill. 92, 57 N.E.2d 451 (Ill.1944)). A creditor ordinarily perfects a lien on rents or profits by initiating foreclosure proceedings that place it in actual possession of the real estate or requesting the appointment of a receiver.

When a debtor files for bankruptcy, 11 U.S.C. § 362(a)(4), generally stays "any act to create, perfect, or enforce any lien against property of the [debtor's] estate." This provision apparently precludes a creditor from perfecting its lien on rents and profits through a formal legal proceeding, and as a result, the trustee ordinarily could avoid the creditor's unperfected interest through its powers as hypothetical lien creditor under § 544(a)(1).

However, pursuant to 11 U.S.C. § 362(b)(3), 11 U.S.C. § 546(b) provides an exception to the general rule that the petition stays actions to perfect an interest and allow the post-petition perfection of a lien in limited circumstances.

> Section 546(b) limits a trustee's § 544 avoiding powers if generally applicable law "permits perfection of an interest in property to be effective against an entity that acquires rights" in the property before the date of perfection. If that law requires that the property be seized or that an action be commenced to perfect the security interest and that action was not taken before the bankruptcy petition was filed, the interest is perfected by postpetition notice. 11 U.S.C. § 546(b).

*In re Casbeer,* 793 F.2d 1436, 1443 (5th Cir. 1986). *See also Virginia Beach Federal Savings and Loan Association v. Wood,* 901 F.2d 849, 852–53 (10th Cir.1990).[3] Under § 546(b), "[n]otice is sufficient if it informs the court or the possessor of the property that the creditor intends to enforce his lien in the rents." *Fed. Nat. Mortgage Association v. Dacon Bolingbrook Associates, Ltd.,* 153 B.R. 204, 212 (N.D.Ill.1993) (quoting *Gelwicks,* 81 B.R. at 448). The creditor's act of perfection under § 546(b) may be in the form of a motion to sequester rents, *In re Southern Gardens, Inc.,* 39 B.R. 671 (Bankr. S.D.Ill.1982), or a motion for relief from the automatic stay so that a lien on rents may be enforced. *Fed. Nat. Mortgage Association,* 153 B.R. at 212; *Gelwicks,* 81 B.R. at 448. *See also In re Woodstock Associates I, Inc.,* 120 B.R. 436, 447 (Bankr.N.D.Ill.1990) (citing cases applying § 546(b) to post-petition perfection of lien on rents).

In this case, no formal proceeding was required for the Bank to provide notice that it intended to enforce the lien in the post-petition profits of the working interests. When the debtor defaulted on the notes by filing the petition for bankruptcy, the outstanding balance became due immediately. At that time, the Bank already possessed the proceeds of the extracted oil by virtue of the assignments and the transfer and division orders. When the Bank stopped remitting to Fullop the excess proceeds from the sale of the oil and began paying the expenses for the operation of the working interests, it not only notified Fullop and the bankruptcy court that the Bank was taking affirmative action to enforce its lien, but also effectively removed Fullop from possession of the working interest and never let the trustee take possession when the proceeding was converted to a

3. Section 546(b) provides:

> The rights and powers of a trustee under sections 544, 545, and 549 of the title [11 U.S.C. §§ 544, 545, and 549] are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b).

Chapter 7 liquidation. *See Riverview State Bank v. Ernest,* 198 F.2d 876, 881 (10th Cir.) (pursuant to mortgage and transfer and division orders, the secured party constructively possessed oil produced under lease and thus its rights were superior to those of the trustee in bankruptcy), *cert. denied,* 344 U.S. 892, 73 S.Ct. 212, 97 L.Ed. 690 (1952). Hence, these actions perfected under § 546(b) the Bank's lien on the post-petition proceeds from the oil runs.

The secured creditor's interest is perfected in only those post-petition rents and profits generated after notice was provided. *Casbeer,* 793 F.2d at 1443–44; *Southern Gardens,* 39 B.R. at 448. Technically, some time may have elapsed between when Fullop filed the petition and when the Bank stopped remitting the excess proceeds. Nonetheless, the Bank apparently has paid all the post-petition expenses for the operation of the leases and did not remit any post-petition proceeds. "The mortgagee's right to rents ... arises only when the mortgagee has affirmatively sought possession with its attendant benefits and burdens." *J.D. Monarch,* 153 B.R. at 833. Because, since the time of the petition's filing, the Bank has accepted all the burdens and benefits of possession of the working interest, we hold that the Bank possessed a perfected security interest in all post-petition proceeds resulting from the oil runs and that the trustee may not avoid that interest through its § 544(a)(1) powers.

III. *Conclusion*

Under Illinois law, two alternative routes exist to grant and perfect a secured creditor's interest in extracted oil. As personal property, a security interest in extracted oil may be granted and perfected pursuant to Article 9 of the UCC; as profits from the real estate, a lien may also be granted under a rents and profits clause in a conveyance of an interest in real property and perfected by the secured creditor taking affirmative action to assert its rights in the rents and profits. Finding the Bank perfected its interest in all the extracted oil and resulting accounts under real estate law, we express no opinion on the lower courts' holding that the Bank met the Article 9 requirements for a perfected security interest in the extracted oil, except that generated under the Carl Short # 3 and # 4 leases.

Based on the rationale set forth above, the judgment of the district court is hereby modified to provide that the Salem National Bank holds a perfected lien on all post-petition proceeds from the sale of oil extracted under the working interests assigned to it by Henry Robert Fullop, the property at issue in this appeal. As modified, the judgment of the district court is AFFIRMED.